# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

MALCOLM QUERIDO

v.                                                                    C.A. NO. 10-098 ML

A.T. WALL ET AL.

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff, Malcolm Querido ("Plaintiff"), *pro se*, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint (the "Complaint" or "Cmpt.") pursuant to 42 U.S.C. § 1983 ("§ 1983") naming fourteen administrators and employees as defendants (the "Defendants") (Docket # 1). Simultaneously herewith, Plaintiff has been granted leave to proceed *in forma pauperis* in this action. Accordingly, pursuant to 28 U.S.C. § 1915(e)(2) ("1915(e)(2)"), I have screened the Complaint. As discussed below, having found that certain claims in the Complaint fail to state claims upon which relief may be granted, I have prepared this Report and Recommendation recommending dismissal of the same.

## BACKGROUND

The following background, alleged in the Complaint, is taken as true for the purpose of screening the Complaint:

I.      **Excessive Force against Plaintiff**

Plaintiff complains that on April 22, 2009, while he was housed in the High Security Center hospital rear rooms on suicide watch, Defendants Lieutenant Sayles and Correctional Officers Marciancy, Oliver, and Johanson took him out of cell number one and, without cuffing him, moved him to cell number three. They then, "for some unknown reason sprayed [him] with a chemical weapon (oc) and pushed [him] in [the] cell [where he] remained for some time not being able to breath [sic] properly ... [and] never able to see the nurse." Cmpt. at p. 3. He was then dragged to the mental health unit while naked and being sexually harassed. Their supervisor, Captain Hadden, "said it was a set up [and Plaintiff] could get it bad on her shift." Plaintiff alleges that the Defendants involved did not follow the policy of the Rhode Island Department of Corrections ("RIDOC") in connection with the foregoing.

## II. Harassment and Taunting

Plaintiff further alleges that on several occasions various correctional officers harassed and taunted him. Specifically, he alleges that (i) Correctional Officers Rigoure, Casavant, Rodrigous, Pricila, and Allard made racial comments and flashed photographs of nooses and the devil at Plaintiff; (ii) Officer Allard flashed the ace of spades card at Plaintiff in a racially disrespectful manner; and (iii) Lieutenant Sayles used profanity and racial slurs against Plaintiff.

## III. Failure to Respond to Suicide Threats

Additionally, Plaintiff alleges that, on July 20, 2009, in response to Plaintiff's claim that he was feeling suicidal, Lieutenant Sayles told Plaintiff to shut-up and that he did not believe Plaintiff. Lieutenant Sayles's response, Plaintiff alleges, did not follow RIDOC Medical/Mental Health Procedures.

## IV. Inadequate Legal Services

Plaintiff alleges that High Security officials are denying him proper legal services and access to legal materials as well as destroying, censoring, and delaying legal mail in a retaliatory fashion.

## V. Conditions of Confinement

Plaintiff also complains about certain conditions at the High Security Center. Specifically, he alleges that the fire safety is inadequate because there is no fire sprinkler system, they do not practice fire safety drills, and there are no proper fire escapes. Additionally he describes the outside recreation cages as being surrounded by a big wall with no way out. He urges, without specific citation, that the conditions fail to follow fire code procedures.

Plaintiff also alleges that the food at the High Security Center is unsanitary and unhealthy and that the "child size portions" are too small. He alleges that the thermal food trays have cracks and leak "Bio Hazzard [sic] liquids" onto the food.

Plaintiff states that Defendants RIDOC Director A.T. Wall, ACI Operational Director Nancy Bailey, Warden James Weeden, and Deputy Warden Michelle Auger are legally responsible for these problems and know the problems exist, yet have done nothing to remedy the problems.

## VI. Disciplinary Reports

Finally, Plaintiff alleges that while a nurse and correctional officer were doing medical rounds on February 7, 2010, Plaintiff observed a fellow prisoner threaten suicide in front of the nurse and officer. The nurse and officer ignored and laughed at the prisoner. After they walked

away, Plaintiff yelled to them that the prisoner was trying to kill himself, but they told Plaintiff to mind his own business. Plaintiff then complained to a uniform supervisor, and the nurse, in retaliation, placed Plaintiff on watch. Plaintiff alleges that, thereafter, as a result of trying to prevent a suicide, he received frivolous disciplinary reports.

## DISCUSSION

### I. Screening Under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis*, § 1915(e)(2) instructs the Court to dismiss a case at any time if the Court determines that the action, *inter alia,* fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). Similarly, 28 U.S.C. § 1915A ("§ 1915A") directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and dismiss the complaint, or any portion thereof, for reasons identical to those set forth in § 1915(e)(2). 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) and § 1915A is identical to the legal standard used when ruling on a Rule 12(b)(6) motion. *See Pelumi v. Landry,* No. 08-107, 2008 WL 2660968, at *2 (D.R.I., June 30, 2008). In making this determination, the Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal,* -- U.S. --, 129 S.Ct. 1937, 1949-1950 (2009). Further, the Court must review pleadings of a *pro se* plaintiff liberally. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285 (1976). A claim fails to state a claim for which relief may be granted if the factual allegations fail to "raise [plaintiff's] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *see also Iqbal,* 129 S.Ct. at 1949-1951 (discussing the plausibility requirement); Fed.R.Civ.P. 8(a)(2).

### II. Legal Standard Under § 1983

In order to maintain a § 1983 action, the conduct complained of must have (1) been committed by a person acting under color of state law and (2) deprived the plaintiff of a constitutional right or a federal statutory right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). Here, although Defendants were acting under state law, Plaintiff's claims are reviewed to determine if they allege facts indicating that Defendants deprived Plaintiff of a constitutional or federal statutory right. As discussed below, upon such review, I have determined that the Complaint states viable claims of excessive force in violation of the Eighth

3

Amendment against four Defendants, but fails to state claims on which relief may be granted against the remaining ten Defendants.

## III. Review of Claims

### A. Claims That Fail to State Claims on Which Relief May Be Granted

#### 1. Harassment and Threats

First, although Plaintiff complains that various correctional officers harassed him on a number of occasions, verbally or by showing him intimidating pictures, such actions, "while unprofessional and deplorable," do not rise to the level of cruel and unusual punishment under the Eighth Amendment. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *see also Johnson v. Unknown Dellatifa,* 357 F.3d 539, 546 (6th Cir. 2004)(verbal harassment, absent any resulting physical injury, generally does not amount to infringement of a constitutional right actionable under Section 1983); *Shabazz v. Cole,* 69 F.Supp.2d 177, 199-201 (D.Mass. 1999). Further, although Plaintiff alleges that Captain Hadden threatened that Plaintiff would "get it bad" on her shift, as he does not provide allegations regarding any injuries that resulted from such threat to not protect Plaintiff from harm, Plaintiff's allegations against Captain Hadden also fail to state a cognizable constitutional claim.

#### 2. Suicide Threat

Plaintiff's claim that Lieutenant Sayles's reaction to Plaintiff's claims of "feeling suicidal" violated his constitutional rights also fails. A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994). With respect to the objective element, although "in prison suicide cases, the objective element is met by virtue of the suicide itself," *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006), here, where Plaintiff does not allege that he actually was able to attempt suicide or self-inflict any harm as a result of Defendant Sayles's actions, Plaintiff has not alleged facts indicating that he suffered a sufficiently serious risk of harm.

Further, Plaintiff's primary allegation here appears to be that Lieutenant Sayles did not follow RIDOC policy regarding responses to prisoner claims of suicidal feelings. And, a violation of RIDOC policy, in and of itself, does not rise to the level of a constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)("Our case law is clear, however, that a

prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met").

### 3. Legal Services and Mail

Plaintiff alleges that the defendants violated his constitutional rights to access the courts by failing to provide him adequate legal resources and by obstructing his legal mail. However, to recover under a theory of denial of access to courts, a plaintiff must demonstrate that he suffered an actual injury, such as having a "nonfrivolous legal claim ... frustrated or ... impeded," as a result of the alleged misconduct. *Lewis v. Casey*, 518 U.S. 343, 351-53, 116 S.Ct. 2174 (1996). Here, Plaintiff does not assert that he suffered any injury to a nonfrivolous lawsuit as a result of the conditions about which he complains. Further, with respect to Plaintiff's claims regarding obstruction of mail, he fails to name a defendant responsible such obstruction. Thus, Plaintiff's claims fail to state a cognizable claim. *See id.* at 351-52; *see also Davis v. Goord*, 320 F.3d 346, 351 (2[d] Cir. 2003)(obstruction of legal mail).

### 4. Conditions of Confinement

The Eighth Amendment requires prison officials to provide humane conditions of confinement by "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832 (citation omitted). To allege an Eighth Amendment claim regarding conditions of confinement, a plaintiff must plead facts which establish both an objective component, that he was forced to endure "extreme deprivations," and a subjective component, that the defendant acted with "deliberate indifference" to such conditions. *See Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). With respect to the objective component, "[t]he Constitution ... 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 & 347, 101 S.Ct. 2392 (1981)). With respect to the subjective element, the plaintiff must plead facts indicating that the defendant was aware of and consciously disregarded serious risk of substantial harm to the plaintiff. *See Farmer*, 511 U.S. at 826.

### a. Fire Safety

"There is no question that fire safety is a legitimate concern under the Eighth Amendment[, and] [p]ersons involuntarily confined by the state have a constitutional right to safe conditions of confinement." *Santana v. Collazo*, 714 F.2d 1172, 1183 (1st Cir.

1983)(citations omitted). Further, a "remedy for unsafe conditions need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475 (1993); *see also Dimarzo v. Cahill*, 575 F.2d 15, 18 (1st Cir. 1978)("One need not wait for the conflagration before concluding that a real and present threat exists"). However, "not every deviation from ideally safe conditions constitutes a violation of the constitution." *Santana*, 714 F.2d at 1183.

Here, although Plaintiff states that the High Security Center does not have sprinkler systems, fire drills or proper fire escapes, he does not address numerous factors affecting fire safety at the prison. He fails to state that the prison lacks a comprehensive fire safety plan or address other factors such as fire extinguishers; smoke detectors in the cell corridors, stairwells and elevator landings; the fire alarm system, evacuation plans, and fire drills; locking devices on cell doors; the prison's combustible load; fire walls; or smoke containment capabilities in the ventilation systems. *See, e.g., Hadix v. Johnson*, 367 F.3d 513, 528-29 (6th Cir. 2004)(reviewing cases dealing with prison fire safety); *Sowell v. Fair*, 915 F.2d 1557, *5 (1st Cir. 1990)(prisoner's claim regarding inoperative smoke detectors failed to state an Eighth Amendment claim). Further, although Plaintiff suggests that the High Security Center fails to follow fire code procedures, *see Masonoff v. DuBois*, 899 F.Supp. 782, 799 (D.Mass. 1995) (although fire safety codes do not set the constitutional minima, they do provide an indication of society's standard of decency), he does not allege any factual basis for reaching such conclusion.

### b.     Food

Similarly, although the Eighth Amendment requires that inmates be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it," *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985)(citations omitted), Plaintiff's bald assertions that the food is unsanitary and unhealthy and that the portions are too small are not sufficiently serious to assert a constitutional violation. Although Plaintiff alleges that the food trays have cracks and leak "Bio Hazzard [sic] liquids" onto the food, he does not indicate, he provides no details describing how the food provided is nutritionally inadequate or indicate any adverse health effects as a result of the food. *See Chase v. Quick*, 596 F.Supp. 33, 34 (D.R.I. 1984)(prisoner's Eighth Amendment claim alleging unsanitary eating conditions failed because plaintiff did not assert specific instances of hunger, food-poisoning, or malnutrition resulting from consumption of the food at ACI). Thus, Plaintiff has not plead adequate facts to move his claim of constitutionally inadequate food "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. 1951.

## 5. Disciplinary Reports

Finally, Plaintiff's claim that frivolous disciplinary reports were lodged against him after he complained that a nurse and correctional officer were not responding to a fellow inmate who was attempting to commit suicide fails for a number of reasons. First, he fails to name a defendant with respect to such claim. Additionally, although Plaintiff is presumably claiming that the filing of the disciplinary reports against him violated his due process rights, a prisoner does not have a free standing liberty interest in not having a false disciplinary charge leveled against him. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Williams v. Foote*, No. 08-2838, 2009 WL 1520029, at *7 (C.D.Cal. May 28, 2009); *cf. Suprenant v. Rivas*, 424 F.3d 5, 13-14 (1st Cir. 2005). Further, to the extent plaintiff is alleging an interference with a liberty interest due to any temporary confinement that resulted from the allegedly false disciplinary charges, because he does not describe any freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *see Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293 (1995), such claim fails.

### B.      Viable Claims:  Eighth Amendment Excessive Force

To state an Eighth Amendment claim for the use of excessive force, an inmate must demonstrate "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986)(citations omitted). The primary inquiry in determining whether a prison official used excessive physical force turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (citations omitted).

Here, Plaintiff alleges that, for no reason, four Defendants (Lieutenant Sayles and Correctional Officers Marciancy, Oliver, and Johanson) sprayed him with a chemical spray, pushed him into a cell, and left him there, unable to properly breathe and without access to a nurse. Plaintiff further alleges that, thereafter, one of the Correctional Officers sexually harassed him while dragging him to the mental health unit. Accordingly, I find that Plaintiff has stated Eighth Amendment claims for relief at this stage of the proceedings against Defendants Sayles, Marciancy, Oliver, and Johanson.

## CONCLUSION

In summary, first, I find that the following claims in the Complaint fails to state on which relief may be granted:

(i)     claims against Hadden, with respect to her statements on April 22, 2009;

(ii)    claims of harassment by Rigoure, Casavant, Rodrigous, Pricila, Allard, and Sayles;

(iii)   claims against Sayles for his reaction to Plaintiff's claims of being suicidal on July 20, 2009;

(iv)    claims of inadequate legal services;

(iv)    claims about the conditions of confinement against Wall, Bailey, Weeden, and Auger; and

(v)     claims arising from allegedly frivolous disciplinary reports lodged against Plaintiff for his actions on February 7, 2010.

I therefore recommend that such claims be DISMISSED. Additionally, as the Complaint contains no other claims against Defendants Hadden, Rigoure, Casavant, Rodrigous, Pricila, Allard, Wall, Bailey, Weeden, and Auger, I further recommend that these seven Defendants be DISMISSED as parties to the instant action.

Second, I find that the Complaint states Eighth Amendment claims of excessive force at this stage of the proceedings against the following nine Defendants: (i) Sayles; (ii) Marciancy; (iii) Oliver; and (iv) Johanson. Accordingly, I recommend that such parties be served as Defendants in this action.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).


Jacob Hagopian
Senior United States Magistrate Judge
December 7, 2010